If you come to U.S. v. Klein Good morning. I'm Stephen Frampton. I'm here for Mr. Klein, appellant. Basically what we're dealing with here are four basic issues. The strengths or weaknesses of these issues seem to turn on the validity of the warrant or the opportunity for the defendant or appellant to, I guess, attack the credibility of the warrant. I submit that probably the weakest argument that I have would be that the search went beyond the scope of the warrant. Of course, if there was not a warrant, then they didn't have any business being in there in the first place. If the warrant is deemed as valid, I guess our position was, why are they searching in the kitchen for car parts? Can you speak up a little? I'm having trouble hearing you. Yes, Your Honors. Excuse me. If the warrant is deemed valid, I guess the argument is, why are they searching in the kitchen for car parts or evidence of stolen vehicles or altered? Isn't that part of an initial sweep through the house? Well, that's what the government has argued. And I submit there is merit to their argument, and I would probably deem that my weakest argument. What's your strongest? I'm sorry? What is your strongest? Well, I think the strongest arguments are dealing with the warrant itself. One of my arguments is the warrant was facially invalid. There were misstatements in the warrant. And I think they arise to the level of recklessness. I don't think I would try to determine it as a bad faith type of an argument, but more of a reckless type of an argument. If you look in the excerpt of the record, page 22, it talks about what Detective Thote can testify to. In the paragraphs listed there, three, it talks about the confidential informer, the C.I. provided information that Troy Klein was on his way up to the Bigelow Gulch Road address, and the C.I. provided clothing description of Troy Klein. Detectives observe the vehicle arrive at the Bigelow Gulch Road address and motorcycle off of, and it gives the address, the Bigelow Gulch property. But if you look at the report, which is page eight. What page were you reading from? But if you compare that to page eight of the excerpt of the record, about midway down, there's an entry dated 530 of 06, and it says Bolton, and across it says surveillance, and below that. What that says is the C.I. advised that Troy Klein might be picking up the bike from Zeesmers tonight. And then if you go down below, another entry, 530 06, Holt, Christopher Holt, stolen motorcycle. You go down. It says, I observed a male wearing a black T-shirt and jeans. Well, that doesn't square at all with what the warrant says. The warrant talks about a clothing description, and then he's on his way, like right away. And that he watched Troy Klein, or watched the person described by the C.I. as Troy Klein. Well, Troy Klein was not described by the C.I. It just says Troy Klein might be there tonight. That's all it says. And then what it says is that, if you go back down to that 530 06, that Christopher Holt section, it just says, I observed a male wearing a black T-shirt. It doesn't say any, that's all it says. It doesn't have anything else about any clothing description that the C.I. provided, because the C.I. didn't provide any kind of a clothing description. So he's basically adding into this warrant things that aren't factually there. And this is critical to this warrant, because it's the only part that connects Mr. Klein to this crime of the motorcycle theft. They make it look like they observed Troy Klein do this, which is critical to the probable cause for the warrant. And also, regarding the warrant, the facial validity of the warrant, it's not supported by the affidavit. This is a technical argument, but when the warrant was signed, there was no affidavit that existed. The affidavit was executed after the warrant. Now, the next issue that I think has validity is this wanting of the disclosure of the informant, because we needed to know who this informant was, because if it's who we think it is, which is Zeesmer, which is the guy that owns this Bigelow Gulch property, and the Bigelow Gulch property is where the motorcycle was observed and was later found, but the informant, the Zeesmer, if that's who he is, was involved in the crime itself of the stolen vehicle. He was involved in the crime of this stolen motorcycle. The informant is the one that altered the motorcycle at his premises, at the Bigelow Gulch premises, not at Mr. Kline's premises where the warrant was executed, but this informant is the guy that received this stolen property, this motorcycle, and he's the one that altered it at his own residence. There's no evidence of alteration at Mr. Kline's residence, and the informant knew that because he altered it at his residence. Evidence of alteration of any of those things that they were claiming in the report that may be found at Mr. Kline's premises would not have been present because all the alteration occurred at the confidential informer's house and it was done by the confidential informer. So the whole reliability of this confidential informer just goes down the tubes and we can't ever challenge this confidential informer because we need to establish who he is before we can move forward on that. I'd like to reserve the remainder of my time for rebuttal. Thank you, Your Honor. Do you have a question? Okay. Oh, you covered it all. Good morning, and may it please the Court. I'm Jared Kimball. I'm from the U.S. Attorney's Office in Spokane, Washington. I handled the matters below in the trial court, and I'm also here for the appeal, responding to the appeal by Mr. Kline. Your Honor, there are four issues before the court, and I'm going to ask the court to find today, ask this court to find, that based on the strength of the record that Judge Whaley set forth in the trial court, that in this matter, the search warrant itself, this was a State search warrant, underlying State search warrant, was facially valid and there's been no demonstration of any weakness. We're going to need to reset your time. Oh. Thank you. Thanks, Judge. Secondarily, that the record is quite competent that Mr. Kline voluntarily consented to the search of his property. Third issue, as I think Mr. Frampton, the gentleman, has conceded, that with the scope argument is a real nonissue. This is a protective sweep that occurred pursuant to a State search warrant. In the course of that sweep, a large bowl containing what appeared to be methamphetamine is seen quite visibly, and so the scope argument I would submit to this Court is quite weak. The last issue, as counsel has noted, is the propriety of Judge Whaley's denial of Mr. Kline's request, defendant's request, for disclosure of a confidential informant. I'll start with the first issue, Your Honor. This case did arise from a State search warrant, and that warrant was assailed in the trial court. Judge Whaley found and made a very extensive ruling in his written order that there was never a showing that there was misstatements of fact in that search warrant, and that on its face, looking at the totality of the circumstances test, which we operate under, under Illinois v. Gates and also Massachusetts v. Upton, which embraced the totality test, looking at that standard, the affidavit was quite competent. The district court was also, I think, quite generous to defense in that they said, look, you seem to be advancing a Franks argument. You haven't quite phrased it as Franks, but I'm going to give you the benefit of the doubt. Judge Whaley also at the trial court went through kind of a Franks analysis, even though it hadn't been properly brought before the court. That is, there were no affidavits, no declarations that usually accompany Franks' motions. And Judge Whaley found that there was never any suggestion of misstatements or of recklessness by the affiant in that case. Counsel, in his ---- What does the affidavit say about identification of the figure who came to the property and moved the motorcycle? It's interesting, Judge. And I'll point the Court, I think, to the record that is most helpful on that point. If we look at the excerpt of record beginning at page 3, you see a motor vehicle recovery report wherein the author, which is a detective named Holt, memorializes that the informant called another detective to say that Mr. Klein was wearing certain clothing, two-wit, a black T-shirt, jeans, and a bandana. And this occurs on May 30th. That information is then memorialized again in the course of the investigative logs by the officer. And this is excerpt of record page 8, wherein they talk about making on-view observations that as Detective Holt, these people are ---- these law enforcement officers are positioning themselves to surveil this location and they say this is on-viewed. The detective, I observed a male wearing a black T-shirt and jeans get on a motorcycle, parked near the shop at issue, as the CI had indicated would likely happen that day. So I have to take issue with counsel's assertion that somehow the detective is supplanting his observations with that of somebody else. What was the recitation in the affidavit about this fact? In the affidavit, Your Honor, and let me just flip to it real quick. I'm looking at excerpt of record page 22, where it's a multi-part affidavit, and one of the sections where Detective Thoet, T-H-O-E-T, provides information. He says in that affidavit that the CI provided information. Again, I've referenced that, that Mr. Klein was on his way to the Big Lo Gulch property, and CI provided a clothing description of Mr. Klein, which I've referenced. The next paragraph says, Detectives then observed the vehicle arrive at Big Lo Gulch and watched a person described by the CI as Mr. Klein. So counsel has asserted that the detectives were making that observation. It's quite clear they attribute it. And in the jurisprudence surrounding search warrants, which has always been pounded into my head in the cases, is attribution. Is the affiant attributing where they got information? I know this, I know that. How do you know that? And in this case, they attribute it to the CI fairly. Regarding the, on that issue, it's clear that the affidavit is competent. The CI's information is one portion of it. It's a lengthy ten-page affidavit. A myriad of facts are presented by different detectives outlying Mr. Klein's history with law enforcement, history with stolen property, his connections to these residences. I would argue it's quite a competent document for a judge to then find probable cause to allow a search. Regarding the next issue, Your Honors, the voluntariness of the consent to search, we also looked at the totality of the circumstances. And we know from the Cormier decision, which is cited in my brief, which is a local case from Seattle, late Judge Dwyer heard that case. There's a five-part test. And we looked to see if these elements are satisfied to determine voluntariness of consent. Was the person in custody? In this case, clearly Mr. Klein was in custody when they asked him to consent to search of his house. Were guns drawn? I would say no. Now, it's true in this case a SWAT team executed the search warrant, but the facts present that Mr. Klein was actually trying to leave the area in his vehicle when the SWAT team was executing the warrant. He was stopped some distance away and brought back to the scene. But it's unlike a case where you have officers with guns pointed at a person. This is not that case. Miranda writes, this is interesting. In this case, the district court found that the Miranda warnings were not competent. But Judge Whaley and his order also, in sustaining the decision to not disclose the strike debt, in sustaining the voluntariness of consent to search, opined that although Miranda warnings were deficient here, Mr. Klein had extensive experience with law enforcement, had read his rights many times, and that the officers who were asking him to consent to the search believed he had been Mirandized. And the record in this case shows there was, for lack of a better expression, too many cooks in the kitchen when this case, this search warrant was executed, and there was misinformation about who had Mirandized Mr. Klein. And Judge Whaley took issue with that, and maybe fairly so. But there was never a suggestion that Mr. Klein asked for a lawyer or asserted rights, which were later ignored. In fact, this case is quite in contrast to the Riley case, which counsel cites, wherein this court opined that when there's a failure of Miranda, when a person requests a lawyer and law enforcement continues to question or press that person, including to press them for consent to search, it's not going to fly. And inevitable discovery won't save that circumstance. Here That same rule might apply if somebody just said, all right, I understand my rights. I don't want to talk anymore. And then they ask for consent. But I gather that did not happen here either. No. And I think, Judge Camby, I think the record shows that this fairly amiable Wasn't given his warning. That's the extent. I think we argue that he was. I think the record showed there was some confusion about that. And Judge Whaley, tie goes to the runner in those circumstances, and he excluded statements. But in the Riley case, that person asked for a lawyer, and he was denied that, and quite a different set of facts that we have here. Regarding the issue of the informant, Your Honors, it's an interesting case, an interesting issue. I looked to guidance to the Roviaro case from the Supreme Court and also to a decision fix-in, which I believe Judge Camby sat on that panel. The standard from the Roviaro decision asks whether or not this informant is such a critical component of the case, in this case an affidavit, that the disclosure in fairness is required to allow the defendant access to him. And in strict terms, is it essential to a fair determination of the cause? This case is quite different from what the court in Roviaro had back in the 50s. In that case, that informant was one of the participants in the crime. And as the court wrote in Roviaro, he was the only witness in a position to contradict certain testimony. He was the sole participant in a transaction which was at issue in that case. The court also in that decision contrasted the truly precipient involved informant with the tipster. And in this case, the informant in our scenario really is on that tipster range, where he's tipping off law enforcement about what he thinks will happen with Mr. Klein, the stolen motorcycle, the movement of that motorcycle, and other information he relates. There's no suggestion that Mr. --" that the informant was present in any way, shape or form when the search warrant was executed. And so he was not a witness to the precipient nature of this offense, that is, the methamphetamine allegations to which Mr. Klein eventually pled guilty. No, it's one step removed. He said he was we think he was probably a co-conspirator or something, participant in the crime, which goes only to the warrant, not to the ultimate charge that was finally made in court. So it's one step farther removed. But he says it's a crucial step because it got the warrant. Well, here's the twist on that one, Your Honor. I think I would still argue this person is more in the tipster category and as defined in Rodearo. But the issue that one of the issues counsel raises in his pleading, his opening brief, and it's on pages 19 and 20, is talking about this unsavory history of this informant. And in this case, the United States provided Judge Oiley with a very, very thick binder relating to a previous case, the same previous case that counsel is addressing regarding who he believes to be the informant for in-camera review. And as this Court opined in the fix-it decision that if we have informant information, in-camera review is maybe a good remedy to pursue so that a district court judge can glean it for Brady or other exculpatory information. In this case, Judge Oiley did glean through that prior incident binder and held there nothing discoverable. And so it really helps, I think, support the broader strength of this record. Your Honor, I am asking the Court to find in this case that Judge Oiley made a very competent record, and I would ask that this Court to affirm the pretrial rulings of Judge Oiley. Thank you. Thank you. Thank you. Stephen Frampton again for Mr. Klein. The Riley case is, I believe, analogous to this case. This case did involve Mr. Klein saying, well, I want to talk to a lawyer, but this case did involve a Miranda violation where somebody wasn't properly Mirandized. And to, I guess, if they're not properly Mirandized, and to continue to ask this person questions, and the responses elicited from those questions lead to the discovery of evidence, I think it's still fruit of the poisonous tree. I think the other scenario would be you just walk up to your house and I go, hey, can I search your house? And you go, okay. Then you start getting into those factors like in the Welch case. But here it's a little bit different. But even if you look at the Welch factors, whether the person was in custody, whether guns were drawn, whether Miranda warnings were given, whether the person was told he had the right to not consent, and whether a search warrant could have been obtained, well, Mr. Klein was under arrest. He wasn't free to leave. He was being detained. There were fully armed SWAT agents there. I mean, they looked like military. I mean, they weren't pointing the gun at him, but they're standing around with these, you know, automatic weapons. There were no Miranda warnings given. And Mr. Klein didn't feel he had any choice but to consent. And I believe the record establishes that they said that they'd just go get another search warrant. But that only comes into play if there's no valid warrant. And I would take issue that this informant is not a mere tipster. That's not what we're dealing with. He was involved in the crime that was the basis for the warrant. But if you look at the excerpt of the record at page 20, it talks about the reliability of this warrant, of this informant. At paragraph 4, it says the C.I. had been through the proper agreements we don't know what agreements and procedures to become a registered confidential informant. He is currently a citizen informant and has proven to be highly reliable. Information has always been accurate in the description of the stolen location of property. And he's testified in superior court as a witness that have led to conviction. I cite a case number in my brief, and we believe that one case was dismissed because he wasn't reliable. But we never had the opportunity to challenge that informant, Mr. Ziesmer, and that's where this crime occurred, that was the basis of the warrant, was at Ziesmer's Thank you. The matter is submitted. Next case, Alexander Ward v. Icicle Seafoods, Inc. That's submitted on the briefs. Now we come to United States v. Robin Miller.
judges: Pregerson, Canby, Hall